```
UNITED STATES DISCTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X        For Online Publication Only
PALM BAY INTERNATIONAL, INC. and PALM
WINE HOLDINGS, LLC.,
                                                                               **ORDER**
                                        Plaintiffs,                            18-CV-1094 (JMA) (SIL)

            -against-
                                                                               **FILED**
THE WINEBOW GROUP, LLC; WINEBOW, INC.;                                         **CLERK**
MARTIN SCOTT WINES, LTD.; and CONSORZIO
COOPERATIVE RIUNITE D'ABRUZZO,                                                 11/1/2018 10:46 am

                                                                               **U.S. DISTRICT COURT**
                                        Defendants.                            **EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X        **LONG ISLAND OFFICE**
```

**AZRACK, United States District Judge:**

Plaintiffs Palm Bay International, Inc. ("Palm Bay") and Palm Wine Holdings, LLC ("Palm Wine") (collectively, "Plaintiffs") commenced this action against defendant Consorzio Cooperative Riunite D'Abruzzo ("Citra" or "Defendant") seeking declaratory and injunctive relief regarding the ownership and exclusive use of two trademarks, as well as the invalidation of another trademark. Defendant moves to dismiss the action on the ground that a forum selection clause requires any litigation to proceed in Italy. Plaintiffs respond that their claims are not subject to the forum selection clause. For the reasons stated below, Defendant's motion to dismiss is denied.

## I. BACKROUND

Citra, an Italian corporation, is a consortium consisting of nine winegrowers' associations hailing from the province of Chieti in the Abruzzo region of Italy. (D'Alleva Decl. ¶¶ 2–3.) For decades, Citra has been a manufacturer and international exporter of wine. (Id. ¶ 3.) In 1991, Citra entered into a "Contract for Exclusive Importation" (the "Contract") with Palm Bay, a Long Island-based importer of Italian wines. (Id. ¶ 5.) Palm Bay became the sole importer of Citra's wine in the United States. (Id. ¶ 7.) The Contract contains a forum selection clause, which provides, "For each controversy that should arise out of the present contract or in its execution The

Law Court of Milan will have exclusive jurisdiction." (Id. ¶ 5, Ex. A.) Article 1 of the Contract states that "[Citra] obliges itself to provide [Palm Bay], the products of its own production under CITRA trademark—and others if that is the case to agree . . . ." (Id. ¶ 6, Ex. A.) The Contract does not contain a choice-of-law provision. In October 2017, Citra notified Palm Bay that it was terminating the Contract, effective April 30, 2018. (Compl. ¶ 13.)

For the duration of their business relationship, Citra manufactured the wine while Palm Bay marketed the product. Indeed, the Contract granted Palm Bay the exclusive right to commercialize, promote, and advise Citra regarding U.S. sales of Citra's product subject to meeting certain sale minimums. (See D'Alleva Decl. ¶ 8, Ex. A, Articles 2 and 3.)

In April 2013, Citra registered the NIRO DI CITRA trademark in the United States. (Id. at ¶ 25.) The registration states that the NIRO DI CITRA mark was first used in commerce in February 2013. (Compl. ¶ 21.) Plaintiffs allege that Citra has since abandoned that trademark because "there has been no use of the NIRO DI CITRA trademark in connection with wine products in the United States for more than three years." (Id.)

Plaintiffs claim they own the SHEEP THRILLS and NIRO marks because they "controlled the nature and quality of the marks as applied to the wine products in the United States at all times[,] . . . conceived of [both] brand names, and [] financed and created the labels." (Id. at ¶ 15.) In November 2016, Palm Wine, an affiliate of Palm Bay, registered the SHEEP THRILLS mark in the United States. (Petteruti Decl. ¶ 8. Tab D.) The registration states that the Sheep Thrills mark was first used in commerce in April 2016. (Compl. ¶ 16.) In October 2015 and June 2016, the Alcohol and Tobacco Tax and Trade Bureau ("TTB") issued Palm Bay a Certificate of Label Approval ("COLA") for SHEEP THRILLS, permitting Palm Bay to use the mark on wine labels. (D'Alleva Dec. Tab 3.)

Unlike SHEEP THRILLS, the NIRO mark is not registered in the United States. In October 2016, TTB issued Palm Bay two COLAs for NIRO. (D'Alleva Dec. Tab 2.) In January 2018, after Citra notified Palm Bay of termination of the Contract but before the termination became effective, a different importer—Martin Scott Wines—was issued two COLAs for the NIRO mark. (Petteruti Decl. ¶ 14. Tab J.) When the Contract terminated on April 30, 2018, Citra appointed a new importer—Winebow, Inc., The Winebow Group, LLC, and Martin Scott Wines, Ltd (collectively, "Winebow").[1] (Pl. Opp. Mem. at 2.)

Plaintiffs commenced this action to obtain (1) declaratory relief that they are the exclusive owners of the SHEEP THRILLS and NIRO trademarks, (2) injunctive relief to prevent Defendant from importing or distributing any product bearing those trademarks in the United States, and (3) cancellation of U.S. Federal Trademark Registration No. 4,325,193 for the NIRO DI CITRA trademark owned by Citra. (Compl. ¶¶ 1–3.) Defendant has moved to dismiss Plaintiffs' complaint on the ground that the Contract's forum selection clause requires adjudication in the Law Court of Milan in Italy.

## II. DISCUSSION

### A. <u>Standard for Analyzing Forum Selection Clauses</u>

Courts apply a four-part analysis in determining whether to dismiss a claim based on a forum selection clause:

> At the first three steps, a court asks (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory, i.e., whether the parties are required to bring any dispute to the designated forum; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the answer to all three questions is yes, the clause is "presumptively enforceable." At the final step, a court asks (4) whether the resisting party has rebutted that presumption by making "a sufficiently strong

---

[1] These entities were voluntarily dismissed from this action without prejudice pursuant to a stipulation in August 2018. (Stipulation of Dismissal without Prejudice, August 2, 2018, ECF No. 45; Order, August 6, 2018, ECF No. 46.)

showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"

Donnay USA Ltd. v. Donnay Int'l S.A., 705 F. App'x. 21, 23 (2d Cir. 2017) (citations omitted). Here, only the third step is in dispute; namely, whether Plaintiffs' claims are subject to the Contract's forum selection clause.

### B. **Parties' Arguments**

The forum selection clause states that the Law Court of Milan will have exclusive jurisdiction over "each controversy that should *arise out of* the present contract or in its execution." (D'Alleva Decl., Ex. A) (emphasis added).) The parties' dispute centers on whether Plaintiffs' claims "arise out of" the Contract and are thus subject to the forum selection clause.

Defendant argues that Plaintiffs' claims arise out of the Contract because Palm Bay's entire business relationship with Citra stems from the Contract. (Def. Mem. at 15.) In other words, Palm Bay had no right to sell or market Citra's wine with the SHEEP THRILLS or NIRO marks absent the Contract. Accordingly, Defendant argues that any determination with respect to Palm Bay's claims require consideration of the parties' rights under the Contract. (Id.)

Plaintiffs oppose Defendant's motion, asserting that under settled Second Circuit precedent—specifically Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007)—its claims do not "arise out of" the Contract. (Pl. Opp. Mem. at 9.) Rather, Plaintiffs contend that their claims merely arise from the federal laws governing ownership and cancellation of federally registered and unregistered trademarks. (Id.)

### C. **Phillips' Interpretation of "Arising Out Of"**

Plaintiffs rely on Phillips in arguing that its claims are not covered by the forum selection clause. In Phillips, the forum selection clause provided that "any legal proceedings that may arise out of [this agreement] are to be brought in England." Id. at 386. The Second Circuit held that

4

this language did not cover the plaintiff's federal copyright, unjust enrichment, and unfair competition claims even though the plaintiff had a contract with the defendant that, according to the defendant, granted defendant a license for the musical recordings at issue in the lawsuit. Id. at 391–92. The court explained that to "'arise out of' means 'to originate from a specified source,' and generally indicates a causal connection." Id. at 389 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 117 (1981) and citing Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128 (2d Cir. 2001)). The phrase does not encompass *all* claims that have some relationship with the contract, including claims that may only "relate to," be "associated with," or "arise in connection with" the contract. Id. The court also explained that the fact that a dispute's resolution arguably depends upon the construction of the parties' agreement is insufficient for a claim to "arise out of" that agreement. Id. at 388–389 (declining to ascribe "arise out of" the expansive connotation it possesses in the arbitration clause context). Additionally, the court observed that if the plaintiff "were to succeed in persuading the trial court of his interpretation of the recording contract, success on the merits of his copyright claims would leave the recording contract undisturbed." Id. at 391.

The Second Circuit then analyzed the substance of plaintiff's claims "shorn of their labels." Phillips at 388 (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993)). The court explained that despite how plaintiff may characterize them, claims only "arise out of" an agreement when they originate from a right or duty under that agreement. Id. at 391. Noting that the complaint did not rely on the parties' contract, the court held that plaintiffs' claims did not arise out of the agreement as "the proceeding [could] begin in court without any reference to the contract." Id. 391–92. The Second Circuit also indicated that raising the contract as a defense to

5

plaintiff's claims was insufficient to bring those claims within the scope of the forum selection clause. Phillips, 494 F.3d at 391.

Since Phillips, the Second Circuit has continued to construe the phrase "arise out of" in the forum selection context narrowly. See Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylamia S.A., 572 F.3d 86, 91 (2d Cir. 2009) (holding that the plaintiffs' trademark claims were not subject to the forum selection clause because they could stand without reference to the contract and "[were] not based on rights originating from the licensing agreements"). In sum, claims that can stand without reference to a contract do not "arise out of" that agreement. Further, raising the contract as a defense in anticipation of plaintiff's claims is also insufficient. For a forum selection clause to apply, a plaintiff's claims must originate from a contractual right or duty.

D. **Analysis**

Phillips instructs that the analysis turn on the substance of Plaintiffs' claims "shorn of their labels" as they relate to the language of the Contract's forum selection clause. Id. at 388; Altvater Gessler, 572 F.3d at 90 ("The court must examine the substance of [a plaintiff's] claims as they relate to the precise language of the specific clause at issue."). Here, the Contract's forum selection clause, which covers "*each controversy* that should arise out of *the present contract or in its execution*," is as narrow as the one in Phillips. 949 F.3d at 386 (encompassing "*any legal proceedings* that may arise out of *[this agreement]*") (emphasis added). Accordingly, the forum selection clause is narrow and only covers claims that assert rights or duties originating from the Contract—not those that merely "relate to" or "arise in connection with" the Contract.

In this case, Plaintiffs' claims originate solely under federal law. Plaintiffs' claims for injunctive and declaratory relief regarding the SHEEP THRILLS and NIRO trademarks are grounded

6

in the Lanham Act. (Compl. ¶ 15) ("*[U]nder U.S. trademark law*, Plaintiffs are the owners of the SHEEP THRILLS and NIRO trademarks . . . ."); (Compl. ¶ 18) ("Based on the above described activities undertaken at its own expense, Palm Bay is the owner of all common-law trademark rights in and to the NIRO brand *under governing U.S. trademark law*."). Plaintiffs' invalidation claim also flows from U.S. trademark law. (Compl. ¶ 33) ("Citra has abandoned whatever rights existed in the NIRO DI CITRA mark *pursuant to the Lanham Act*."). Defendant, however, contends that Plaintiffs' claims arise out of the Contract because the parties' entire business relation stems from the agreement and, thus, any determination with respect to those claims require consideration of parties' rights under the Contract. (Def. Mem. at 17–18.) Defendant cites Young Women's Christian Association, National Board v. HMC Entertainment in support of its argument. No. 91-CV-7943, 1992 WL 279361 (S.D.N.Y. Sept. 25, 1992). HMC Entertainment is a pre-Phillips case that relies on Bense v. Interstate Battery Systems of America, in which the Second Circuit held that the forum selection clause at issue—which covered "any suit or causes of action arising directly or indirectly from this agreement"—encompassed the plaintiff's antitrust claims because "the 'gist' of plaintiff's claims involved defendant's allegedly wrongful termination of the agreement," 683 F.2d 718, 720 (2d Cir. 1982). Phillips, however, distinguished Bense, stating:

> In Bense, the plaintiff could only show injury by demonstrating that the defendant had breached the contract by terminating without due cause. The contract containing the forum selection clause was the source of the right, duty and injury asserted by the plaintiff and we accordingly held the clause to govern his claims.

Phillips, 494 F.3d at 392. Here, unlike Bense, Plaintiffs' trademark infringement claims do not require Plaintiff to show that Defendants breached a right or duty in the Contract. Like the plaintiff's copyright claims in Phillips, which originated under the Copyright Act, Plaintiffs' claims originate solely under the Lanham Act. Thus, in light of Phillips, the Court's "focus [is]

7

on the source of the rights or duties sought to be enforced by the complaining party," irrespective of the source of the parties' business relationship. Phillips, 494 F.3d at 392.

Defendant also attempts to distinguish Phillips and similar case law on the grounds that the ownership rights in Phillips arose *before* the consummation of the agreement, whereas Palm Bay purports to have obtained its ownership interest in the marks *after* the Contract's execution. (Def. Mem. at 16.) Defendant has not cited any cases imposing a temporal requirement. Cf. Japan Press Service, Inc. v. Japan Press Service, Inc., No. 11-CV-5875, 2013 WL 80181 at *11 (E.D.N.Y. Jan. 2. 2013) (finding that plaintiff's trademark infringement claims were not subject to the forum selection clause even though the plaintiff's alleged ownership rights arose after the parties' executed their agreement). In any event, such a requirement cannot be squared with Phillips. The central inquiry is whether the claims originate from the parties' agreement—not when those ownership rights supposedly arose in relation to an agreement's execution.

Here, the source of Plaintiffs' claims is federal law, not the Contract, because the claims may be raised without reference to the agreement. In other words, Plaintiffs' claims do no invoke or seek to enforce a contractual right or duty.

Additionally, the fact that a contractual provision may be asserted as a defense to Plaintiffs' claims is insufficient to bring those claims within the forum selection clause's scope. Phillips, 494 F.3d at 391. Specifically, Defendant contends that Article 1 operates as a licensing provision that confers Citra with ownership rights to any trademarks involved in the parties' course of dealing (See Def. Mem. at 4; Def. Reply Mem. at 4.) Plaintiffs dispute this. (See Petteruti Decl., ¶ 5.) This issue need not be resolved to decide the instant motion; but Article 1 of the Contract is far from unambiguous. It is unclear whether the Contract grants Citra any rights concerning the SHEEP THRILLS and NIRO trademarks such that a finding of copyright infringement would be tantamount

to a finding of a breach of a licensing provision in the Contract.  Cf. Direct Mail Prod. Serv. Ltd. v. MBNA Corp., No. 99-CV-10550, 2000 WL 1277597, at *6 n.2, *1 (S.D.N.Y. Sept. 7, 2000) (noting that "the Agreement was essentially a licensing arrangement" due to its "[inclusion of] detailed provisions governing the use and ownership of the [intellectual property]" such that "a finding of copyright infringement would be tantamount to a finding of a breach of the Agreement's provisions governing ownership and use of [that property]").  In any event, Phillips instructs that a plaintiff's claims do not arise out of a contract if the parties' agreement is only relevant as a defense.  Phillips, 949 F.3d at 391.  Here, as Phillips, "[t]he only nexus between the proceedings and the contract [is] when the defendants raise their defenses."  Id. at 392.  Therefore, like Phillips, Plaintiffs' claims may begin in court without reference to the Contract.  The forum selection clause is inapplicable.

### III. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is denied.

The oral argument scheduled for November 2, 2018, at 2:00 p.m is cancelled.  A status conference before the Court is hereby scheduled for November 20, 2018, at 3:00 p.m. in courtroom 6E of the Brooklyn courthouse.

**SO ORDERED.**

Dated: November 1, 2018
Central Islip, New York

                                                                    /s/  (JMA)
                                          JOAN M. AZRACK
                                          UNITED STATES DISTRICT JUDGE